BENTON COUNTY WATER COMPANY, INC. *v.*
MAUPIN CUMMINGS, JUDGE

5-4130                                              411 S. W. 2d 890

Opinion delivered March 6, 1967

*Wade & McAllister,* for appellant.

*Little & Enfield,* for appellee.

GEORGE ROSE SMITH, Justice. The city of Sulphur Springs filed its complaint in the Benton Circuit Court, seeking to acquire by condemnation the waterworks system of the petitioner, Benton County Water Company, Inc., which was serving the city. By demurrer the water company questioned the court's jurisdiction. The court overruled the demurrer. The petitioner then filed the present application for a writ of prohibition, contending that the only way for a city to condemn an existing waterworks system is to proceed before the Public Service Commission pursuant to Act 324 of 1935. Ark. Stat. Ann. § 73-247 (Repl. 1957).

Several statutes are pertinent to the question presented. Section 1 of Act 131 of 1933 declared that "any

city . . . may purchase or construct a waterworks system. . . . as in this act provided." Ark. Stat. Ann. § 19-4201 (Repl. 1956). Section 9 of that act vested in municipalities the power of eminent domain "[f]or the purpose of acquiring any waterworks system under the provisions of this act." Before the wording of Section 9 was changed by amendment we held that the city, in acquiring an existing waterworks system, might proceed either in the circuit court or before the Department of Public Utilities (now the Public Service Commission). *City of Helena* v. *Ark. Utilities Co.,* 208 Ark. 442, 186 S. W. 2d 783 (1945).

Ten years after the decision in the *Helena* case the legislature changed the first sentence of Section 9 of the 1933 act to read as follows: "For the purpose of acquiring any lands or property for the operation of the municipal waterworks system authorized by law, a municipality shall have the right of eminent domain as provided in Act 53 of the Acts of the General Assembly of the State of Arkansas for the year 1955." Act 321 of 1955; Ark. Stat. Ann. § 19-4209. See also Act 269 of 1957; Ark. Stat. Ann. §§ 35-908 *et seq.* (Repl. 1962). The petitioner now contends that the 1955 amendment was intended to take from municipalities the power to condemn an existing waterworks system by a proceeding in the circuit court, leaving only the authority to proceed before the Public Service Commission.

Even if the petitioner is correct in its interpretation of Act 321 of 195, there is other statutory authority for the present circuit court proceeding. Act 1 of 1875, a comprehensive statute governing municipalities, conferred upon municipal corporations the power of eminent domain for the construction of certain improvements and for the present circuit court proceeding. Act 1of 1875, a comprehensive statute governing municipalities, conferred upon municipal corporations the power of eminent domain for the construction of certain improvements and condemn private property for the construction of wharves, levees, parks, squares, market places, or other

lawful purposes. The term, or other lawful purposes, as used in this section, shall include a waterworks system in its entirety, or any integral part thereof, or any extension, addition, betterment, or improvement to an existing waterworks system operated by such municipal corporation." Act 155 of 1935; Ark. Stat. Ann. § 35-902.

The petitioner argues that the language just quoted is limited to the taking of private property "for the construction" of the enumerated improvements and that therefore it does not embrace the condemnation of an existing waterworks system. We think there are at least three reasons for disagreeing with this argument.

To begin with, when the language in question was adopted in 1935 there was on the statute books Act 131 of 1933, *supra*, which explicitly empowered municipalities to exercise the right of eminent domain either to purchase or to construct a waterworks system. We find nothing in the 1935 act to indicate that the legislature intended for that act to take away any authority already vested in municipalities. To the contrary, both the body of the statute and its emergency clause suggest a legislative intention to enlarge the cities' powers.

Secondly, the phrase "for the construction of" does not literally apply, of course, to "lawful purposes," since one cannot construct a lawful purpose. The improvements specifically mentioned, with the possible exception of market places, are of a type ordinarily created by some branch of the government rather than by private capital. Hence before the act was amended there was little need for it to refer to a purchase in addition to a construction, because such improvements could not ordinarily be bought. In a very similar situation, involving an analogous amendment to a constitutional provision, we held that the phrase, "construction, re-construction, or extension," was broad enough to include the purchase of an existing structure. *Garner* v. *Lowery*, 221 Ark. 571, 254 S. W. 2d 680 (1953). The condemnation of

an existing waterworks system is in reality a method of purchasing it—a fact recognized by Act 131 of 1933.

Finally, the 1935 act refers to "a waterworks system in its entirety, *or any integral part thereof.*" The italicized clause is useless and meaningless if the act contemplates the acquisition of property for construction only, because the act goes on to refer to "any extension, addition, betterment, or improvement to an existing waterworks system operated by such municipal corporation." We think it evident that the delegated power to condemn an integral part of an existing waterworks system envisaged the acquisition of that part of a system serving the particular municipality, even though the water company might serve other municipalities as well. That precise situation was presented in 1936, when the city of Little Rock bought that part of the Arkansas Water Company's system that was serving Little Rock but did not buy that part serving North Little Rock. See *North Little Rock Water Co.* v. *Water Works Commission of Little Rock,* 199 Ark. 773, 136 S. W. 2d 194 (1940). Even construing the statute strictly, as we do in cases of this kind, we are convinced that the legislature intended for cities to have the power to condemn either a waterworks system in its entirety or an integral part of one.

Writ denied.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur with the result reached by the majority but upon the basis of a different section of the statutes and a different construction of those to which they refer. They rely on Act 155 of 1935 [Ark. Stat. Ann. § 35-902 (Repl. 1962)] as the source of the city's power by giving it a strained construction rather than a strict one as is required.

In determining whether the city has the power to condemn the waterworks system, it should be kept in

mind that grants from the sovereign are to be construed strictly against the grantee; that the authority for taking private property should be clearly expressed; that statutes relating to the delegation of the state's power of eminent domain should be strictly construed in favor of the property owner and against the condemnor and any fair, reasonable and substantial doubt about the existence of a power in a municipal corporation must be resolved against it. *City of Little Rock* v. *Raines*, 241 Ark. 1071, 411 S. W. 2d 486; *City of Osceola* v. *Whistle*, 241 Ark. 604, 410 S. W. 2d 393; *City of Little Rock* v. *Sawyer*, 228 Ark. 516, 309 S. W. 2d 30.

The majority holds that the power exists because it cannot be said that "a lawful purpose" can be constructed. It is no more logical to say that "a lawful purpose" can be condemned, but giving the Act the interpretation they have requires that construction. As they construe the section, it would read:

> "The right and power of eminent domain is hereby conferred upon municipal corporations to enter upon, take and condemn * * * other lawful purposes. The term, or other lawful purposes, as used in this section, shall include a waterworks system in its entirety, * * *"

Applying the rules of strict construction, the statute should be construed as relating to waterworks systems as if it read:

> "The right and power of eminent domain is hereby conferred upon municipal corporations to enter upon, take and condemn private property * * * for * * * a waterworks system in its entirety, or any integral part thereof, or any extension or betterment or improvement to an existing waterworks system operated by such municipal corporation."

Under this construction, authority to condemn an existing waterworks cannot be found in this section alone.

Nor do I agree with them that condemnation is a method of purchase. A condemnation is a taking. Even if full compensation must be made, the exercise of the power of eminent domain is no less a taking.

This does not mean that the city cannot proceed in this action under the very section of the statute wherein the majority finds authority. Ark. Stat. Ann. § 19-2317 (Repl. 1956), as amended, is basically § 14 (as amended) of Act 1 of 1875, the comprehensive "Municipal Code" then adopted. This section gives municipalities the "power to provide a supply of water by constructing or requiring [acquiring] by purchase or otherwise, wells, pumps, cisterns, reservoirs or waterworks * * *". The bracketed word is supplied by the compiler of the statutes. His action in so doing was proper. It is a well-settled rule of statutory construction that statutes should receive a common-sense construction and where one word has been erroneously used for another and the context affords the means of correction, the proper word will be deemed substituted when the intent is plainly deducible from other parts of the statute. *Graves* v. *Burns*, 194 Ark. 177, 106 S. W. 2d 602; *Daniels* v. *Johnson*, 216 Ark. 374, 226 S. W. 2d 571; *Howze* v. *Hutchens*, 213 Ark. 52, 209 S. W. 2d 286. The intention of the General Assembly to have used the word "acquiring" is obvious.

An analysis of Act 1 of 1875 indicates the explicit legislative intention that § 74[1] be the section governing proceedings for the condemnation of property for proper municipal purposes authorized by the Act. § 7 gave authority to cities and towns to supervise and control streets, highways, bridges and alleys. § 8 gave authority to establish and construct landing places, levees, wharves, docks, piers and basins. § 15 authorized the provision of cemeteries. § 18 authorized establishment of streets, alleys, public grounds, wharves, landing

---

[1]Ark. Stat. Ann. §35-902 is part of this section as amended.

places, market places, and construction of sewers and drains. § 30 prohibited any improvement requiring proceedings to condemn private property without the concurrence of two-thirds of the whole number of members of the council. The sub-title of the Act which precedes sections 74 and 75, both inclusive, is: "APPROPRIATION OF PRIVATE PROPERTY." The title of § 74 is "Proceedings to appropriate private property to public use." A reading of that section in its original form clearly shows that this section was intended to provide the means and procedure for a city to acquire property for any of the municipal purposes provided for in the entire Act. Wharves, levees, parks, squares and market places are enumerated. The phrase "other lawful purpose" was used in the original Act. It could refer to nothing other than the lawful purposes of municipal government as therein provided, but not specifically enumerated in that section itself. I have not been able to find other authority existing upon adoption of the Act for the exercise of the power of eminent domain by municipal corporations for many of these purposes.

The intention of the General Assembly to enact a comprehensive statute covering all phases of municipal government is clear. The title of the Act is, "AN ACT to be entitled an act for the incorporation, organization and government of municipal corporation." § 95 was a general repealer. Ark. Stat. Ann. § 19-2317 and § 35-902 are simply §§ 14 and 74, respectively, of the 1875 Act and when read together clearly give a municipal corporation the power to acquire a waterworks by the exercise of the power of eminent domain, this being one of the "other lawful purposes" contained in the Act as amended.