## UNITED STATES v. TAYLOR.
### Crim. A. No. 8258.

United States District Court
D. Minnesota, Fourth Division.
Nov. 25, 1953.

George M. Sullivan and Donald E. Rockne, St. Paul, Minn., for defendant, in support of said motion.

George E. MacKinnon, U. S. Atty., and Clifford Janes, Asst. U. S. Atty., St. Paul, Minn., for plaintiff, in opposition thereto.

DONOVAN, District Judge.

This matter is before the Court on defendant's motion for vacation and correction of sentence, hearing thereon having been had on November 3, 1953.

The Court having heard the arguments of counsel, read their briefs, and being fully advised in the premises, makes the following Findings of Fact, Conclusions of Law and Order.

### Findings of Fact

I.

The indictment was returned under Title 26 U.S.C. § 2591(a), charging de-

fendant in five counts relating to the transfer of marihuana.

## II.

At the time of the proceedings had herein, defendant was 39 years of age and had a prior criminal record, including arrest and sentence for the sale of marihuana, on which charge he was duly arraigned in United States District Court, District of Minnesota, before the Honorable Matthew M. Joyce, Judge thereof, entered a plea of guilty on September 24, 1940, and was subsequently sentenced on said plea.

## III.

On May 12, 1952, defendant was arraigned under the indictment above referred to and entered a plea of not guilty, whereupon the case was duly set for trial.

## IV.

On November 5, 1952, a jury having been waived by defendant, the case came on for hearing before the undersigned.

## V.

Following conclusion of the evidence and the trial, the government and defendant duly rested. Counsel for the defendant pleaded with the Court to make a finding of not guilty, followed by a recess.

## VI.

When court resumed on said date counsel for defendant requested the privilege of changing defendant's plea from "not guilty" to "guilty", which was expressly concurred in by defendant in open court.

## VII.

The court granted defendant's request, formally made as a motion, and a plea of guilty was entered on said date.

## VIII.

On January 19, 1953, defendant having waived counsel, the court, on defendant's plea of guilty, found the defendant guilty as charged and adjudged that defendant be committed to the custody of the At-torney General or his authorized representative for a period of five years and that he be required to pay a fine of one dollar ($1.00).

## IX.

That defendant has been detained in Ramsey County Jail at St. Paul, Minnesota, since sentence was imposed by reason of an information having been filed, charging defendant with misprision of felony.

## X.

On October 20, 1953, defendant filed his said motion for vacation and correction of sentence. That no proof or evidence has been submitted in connection therewith, and a hearing was had thereon on November 3, 1953.

## Conclusions of Law

### 1.

The Court has jurisdiction of the subject matter under consideration.

### 2.

The defendant knew the contents of the indictment before entering his plea of guilty, and he was not misinformed or misled in any respect.

### 3.

The sentence imposed was in accordance with law.

### 4.

There has been no denial or infringement of any of the constitutional rights of the defendant.

### 5.

The motion for vacation and correction of said sentence should not be granted, and is denied.

It is so ordered.

The Memorandum attached hereto is hereby made a part hereof.

Defendant is allowed an exception.

## Memorandum

This matter arises by reason of defendant's motion to vacate or correct the sentence imposed herein, the defendant contending that it is based on an

invalid and non-existent law, or that the law itself is unconstitutional as being a "cruel and unusual punishment."

Defendant Calvin E. Taylor was indicted for a violation of 26 U.S.C.A. § 2591(a) on five counts and tried by the Court on November 5, 1952. After both defendant and plaintiff rested, the defendant entered a plea of guilty to count one of the indictment.[1] Prior to sentencing, an information was filed pursuant to Public Law 255, 82nd Congress[2] charging the defendant with being a second offender under 26 U.S.C.A. § 2591(a), the Marihuana Tax Act. The defendant, having admitted the allegations of the Information were true, was sentenced by the Court, pursuant to the provisions of Public Law 255, 82nd Congress, to imprisonment for a period of five years and to pay a fine of one dollar, the minimum penalty provided for under that law. Subsequently, the defendant appeared before this Court and asked for assistance in preparing a proper motion to the Court for review of his sentence, whereupon this Court appointed Mr. George M. Sullivan as counsel for defendant.

Public Law 255 (the Boggs Act) was presented to the President on October 22, 1951 (Cong.Rec., Vol. 97, Part 10, page 13784) and approved and signed by the President on November 2, 1951. The Congress adjourned sine die on October 20, 1951.

With these facts of record, defendant contends the act herein is invalid in the first instance in that it was presented to the President two days after the adjournment sine die of Congress, and secondly, that the act was not approved

---

1. Count One of the indictment charged as follows:

"On or about the 2nd day of February, 1952, in the City of Minneapolis, County of Hennepin, State and District of Minnesota, one Calvin E. Taylor, did then and there unlawfully transfer 10 marihuana cigarettes to one W. G. Wright, then and there being, hereinafter referred to as 'transferee', said transfer not being in pursuance of a written order of the said transferee on a form issued for that purpose by the Secretary of the Treasury of the United States."

2. Public Law 255, Section 2557(b) (1) of Title 26 U.S.C.A. (commonly known as the Boggs Act) reads as follows:

"Whoever commits an offense or conspires to commit an offense described in this subchapter, subchapter C of this chapter, or parts V or VI of subchapter A of Chapter 27, for which no specific penalty is otherwise provided, shall be fined not more than $2,000 and imprisoned not less than two or more than five years. For a second offense, the offender shall be fined not more than $2,000 and imprisoned not less than five or more than ten years. For a third or subsequent offense, the offender shall be fined not more than $2,000 and imprisoned not less than ten or more than twenty years. Upon conviction for a second or subsequent offense, the imposition or execution of sentence shall not be suspended and probation shall not be granted. For the purpose of this paragraph, an offender shall be considered a second or subsequent offend-er, as the case may be, if he previously has been convicted of any offense the penalty for which is provided in this paragraph or in section 2(c) of the Narcotic Drugs Import and Export Act, as amended (U.S.C.A., title 21, sec. 174), or if he previously has been convicted of any offense the penalty for which was provided in section 9, chapter 1, of the Act of December 17, 1914 (38 Stat. 789), as amended; section 1, chapter 202, of the Act of May 26, 1922 (42 Stat. 596), as amended; section 12, Chapter 553 of the Act of August 2, 1937 (50 Stat. 556), as amended; or sections 2557(b) (1) or 2596 of the Internal Revenue Code enacted February 10, 1939 (ch. 2, 53 Stat. 274, 282), as amended. After conviction, but prior to pronouncement of sentence, the court shall be advised by the United States Attorney whether the conviction is the offender's first or a subsequent offense. If it is not a first offense, the United States attorney shall file an information setting forth the prior convictions. The offender shall have the opportunity in open court to affirm or deny that he is identical with the person previously convicted. If he denies the identity, sentence shall be postponed for such time as to permit a trial before a jury on the sole issue of the offender's identity with the person previously convicted. If the offender is found by the jury to be the person previously convicted, or if he acknowledges that he is such person, he shall be sentenced as prescribed in this paragraph."

by the President within ten days. The points made by defendant will be considered in the order named.

As to the first contention, while it is well settled, of course, that Congress can take no legislative action while it is not in session, the Court finds little merit in defendant's contention that the act of presentment (October 22, 1951) was a legislative act. In the absence of any cited authorities directly in point, the Court does not agree with defendant's contention that all bills emanating from the legislative body must be presented to the President prior to an adjournment sine die. Obviously, the matter of presentment after adjournment is problematical, but in the situation here presented the Court feels bound to uphold the validity of a law in the absence of controlling precedent to the contrary; hence the conclusion that the President had before him for consideration a legislative act that was properly passed and presented.

The second contention of the defendant that the statute is invalid in that the President did not sign it within the ten-day limit [3] is a serious challenge to the constitutionality of the act.

It appears that in 1951, the 22nd day of October (day of presentment) fell on a Monday, and the 2nd day of November (day of signing) on a Friday. There was one Sunday in between these dates. The defendant contends that the Presi-

dent signed this bill on the eleventh day after presentment, and as Congress had adjourned sine die, the approval and signing were null and void.[4]

The pivotal issue in this case, therefore, and a most interesting one, is whether the day of presentment is to be considered in the computation of the ten-day period. If it is not, then the bill is valid as having been signed on the tenth day.

The authorities cited by defendant, notably Arnold v. United States, 9 Cranch 104, 120, 3 L.Ed. 671, are distinguishable from the instant case in that the computation of time in those cases was from an *act done*, rather than *from a day*. The language of the Supreme Court in one of the very cases cited by defendant, Sheets v. Seldon's Lessee, 2 Wall. 177, 69 U.S. 177, 17 L. Ed. 822, is determinative of the instant case. In that case Mr. Justice Field, speaking for the Court, 69 U.S. at page 190 commented as follows:

"The general current of the modern authorities on the interpretation of contracts, and also of statutes, where time is to be computed from a particular day or a particular event, as when an act is to be performed within a specified period *from* or *after* a day named, is to exclude the day thus designated, and to include the last day of the specified period."

---

3. Article I, Section 7, clause 2, of the Constitution provides that:

"Every Bill which shall have passed the house of representatives and the Senate, shall, before it becomes a Law, be presented to the President of the United States; If he approve he shall sign it; but if not, he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal, and proceed to reconsider it. If after such reconsideration two-thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two-thirds of that House, it shall become a Law. But in all Cases the Votes of both Houses shall be determined by Yeas and Nays, and the Names of the Persons voting for and against the Bill shall be entered on the Journal of each House respectively. *If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall* have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, *unless the Congress by their Adjournment* prevent its Return, in which Case it shall not be a Law." [Italics supplied.]

4. Under the Pocket Veto Case, Okonagon, Methow, etc. Tribes v. United States, 279 U.S. 655, 49 S.Ct. 463, 73 L.Ed. 894, a bill not signed after adjournment sine die, cannot become a law.

With this language in mind, it is clear that the statute in question herein was signed on the tenth day, and thus was valid.

Having concluded that the Boggs Act was validly enacted, the remaining question for disposition is whether the statute in itself is unconstitutional as imposing a "cruel and unusual punishment." This type of attack, as said by the Court in Cooper v. United States, D.C.S.D.N.Y., 114 F.Supp. 464, 465, is not a novel one.

Specifically, the defendant contends that this statute is unconstitutional in that (1) it takes away from the trial court its traditional discretionary power, and (2) it is too broad in scope in punishing addicts and peddlers the same.

These contentions of defendant may be dismissed summarily with the comment that habitual criminal type statutes have consistently been held by our courts to be constitutional and as not being an infliction of cruel and unusual punishment. Cooper v. United States, supra.

The Court cannot seriously consider the contention of defendant that the statute is too broad in its scope in treating peddlers and addicts alike, inasmuch as counsel have cited no authorities in support of their position. However, it seems readily clear that the purpose of this statute is to eliminate drug traffic at its source, so far as possible, and this statute is particularly designed to react against the type of defendant involved in this case. Whether or not the correction of narcotic violations is a medical problem, as defense counsel suggests, is not for this Court to determine. What we are concerned with here is the validity of the statute which this Court holds to have been validly enacted, and to be constitutional in its provisions.

Defendant's counsel have ably briefed and orally argued defendant's contentions in the instant case. It is manifest that much thought and time have been devoted by them in the presentation of defendant's motion.

The motion is denied.